IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOE BENOIT MARTIN, #208789,     )
                                )
        Plaintiff,              )
                                )
    v.                          )           CASE NO. 2:07-CV-335-MEF
                                )                    [WO]
                                )
WARDEN LEON FORNISS, et al.,    )
                                )
        Defendants.             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Joe Benoit

Martin ["Martin"], a state inmate, in which he presents claims against Leon Forniss, the

warden of Staton Correctional Facility, Richard Allen, commissioner of the Alabama

Department of Corrections, and correctional officers Edward Robinson, Billy Pittman,

Marcus Sanford and Willie Copeland.  Specifically, Martin contends the defendants acted

with deliberate indifference to his safety by failing to protect him from attacks by other

inmates.  He also complains that these attacks resulted from the overcrowded conditions

in existence throughout the Alabama prison system.  Martin seeks declaratory, injunctive

and monetary relief for the alleged violations of his constitutional rights.

The defendants filed a special report and supporting evidentiary materials addressing

Martin's claims for relief.  Pursuant to the orders entered herein, the court deems it appropriate to treat the defendants' written report as a motion for summary judgment. *Order of June 12, 2007 - Court Doc. No. 16*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district

_____

[1]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord

3

> deference to the views of prison authorities.  Unless a prisoner can point to
> sufficient evidence regarding such issues of judgment to allow him to prevail
> on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted).  Consequently, to survive the defendants' properly supported motion for

summary judgment, Martin is required to produce "sufficient [favorable] evidence" which

would be admissible at trial supporting his claims of deliberate indifference.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil*

*Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ...

or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.

"A mere 'scintilla' of evidence supporting the opposing party's position will not suffice;

there must be enough of a showing that the [trier of fact] could reasonably find for that

party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202

(1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory

allegations based on subjective beliefs are likewise insufficient to create a genuine issue

of material fact and, therefore, do not suffice to oppose a motion for summary judgment.

*Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001);

*Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (the plaintiff's "conclusory

assertions ..., in the absence of [admissible] supporting evidence, are insufficient to

withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant

of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will

not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906

F.2d 667, 670 (11ᵗʰ Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Martin fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

### III.  RELEVANT FACTS

On February 2, 2007 at approximately 11:45 a.m., inmates Charles Simmons and Robert Hardy physically assaulted Martin while he slept in his cell.  Simmons and Hardy admitted they assaulted Martin and advised Sgt. Reosha Butler the assault occurred "because Inmate Martin had previously called Inmate Simmons a 'bitch.'"  *Defendants' Exhibit 1-E (Incident Report No. SCF 07-0093) - Court Doc. No. 15-6* at 1.  Hardy also advised medical personnel "another inmate was calling me names so I beat [the other inmate] up."  *Defendants' Exhibit 1-E (February 2, 2007 Body Chart of Robert Hardy) - Court Doc. No. 15-6* at 5.  After medical evaluations of Simmons and Hardy, correctional officials placed these inmates in administrative segregation pending the initiation of various disciplinary actions against them due to their assault of Martin.  Subsequently, Hardy was convicted of disciplinary infractions for being in an unauthorized area and assault on another inmate.  *Defendants' Exhibit 1-F - Court Doc. No. 15-7* at 1-3; *Defendants' Exhibit 1-G - Court Doc. No. 15-8* at 1-4.  In addition, Simmons was convicted of assault on another inmate.  *Defendants' Exhibit 1-H - Court Doc. No. 15-9*

at 1-4.

On the same date of the assault, inmates Martin, Hardy and Simmons signed a living

agreement which reads as follows:

> This is to acknowledge that I (we) have been orally reprimanded this date by
> Lt. Willie Copeland concerning our disagreement.  By our signatures(s) we
> relieve[] any and all Department of Corrections Officials of any liabilities
> and damages.  We acknowledge that our problem(s) have been worked out
> an[d] that we can live at this institution without violence existing between us.
> I (we) understand that, even though I (we) have signed this form, disciplinary
> action may still be taken against me (us).  This statement is made of my (our)
> own free will without threats or promises from anyone.

*Defendants' Exhibit 1-E - Court Doc. No. 15-6* at 2; *Defendants' Exhibit 2 (Affidavit of*

*Leon Forniss) - Court Doc. No. 15-* at 2 ("The living agreement [signed by inmates Martin,

Hardy and Simmons] enabled the inmates to return to population stating that they could

live together in this institution without violence existing between them.").

On the evening of February 13, 2007, inmate Hardy "verbally threatened the

plaintiff and this incident was reported to Lt. W. Copeland" the following morning.

*Plaintiff's Complaint - Court Doc. No. 1* at 3, 5.  Martin, by his delay in reporting the

threat, indicates he did not believe the threat an imminent one.  Additionally, following this

alleged threat, Martin did not (i) identify Hardy as his enemy, (ii) submit a request for

placement in protective custody, or (iii) advise any correctional official that he feared

attack by Hardy.  No further incidents of any nature involving Martin and Hardy occurred

for six weeks.

8

On March 27, 2009, Martin and Hardy engaged in a physical altercation in the dining hall which began when "inmate Hardy ... asked inmate Martin to stop talking about him (Hardy).  Inmate Martin stated he was talking to inmate Terry Bolin about an inmate that had transferred away from Staton on 3-25-07."  *Defendants' Exhibit 1-B (Incident Report SCF 07-0279) - Court Doc. No. 15-3* at 1.  Martin advised medical personnel that Hardy "jumped on me ... for no reason."  *Defendants' Exhibit 1-B (March 27, 2007 Body Chart of Joe Benoit Martin) - Court Doc. No. 15-3* at 4.  "Inmate Hardy was placed in a single cell pending further investigation of the incident.  Inmate Martin was allowed to return to the same assigned bed in population.  Inmate Hardy remained in a single cell pending an enemy validation on Inmate Martin and Inmate Hardy.  [Prior to this incident,] Inmate Martin never expressed to any of the security staff that Inmate Martin feared for his life being in population with Inmate Hardy."  *Defendants' Exhibit 2 (Affidavit of Leon Forniss) - Court Doc. No. 15-* at 2.  Based on the circumstances of this altercation, Hardy was convicted of fighting without a weapon.  *Defendants' Exhibit 1-C - Court Doc. No. 15-4* at 1-3.

"On April 25, 2007, Inmate Martin expressed to Correctional Lieutenant Willie Copeland that he feared bodily harm being in Staton's population."  *Defendants' Exhibit 2 (Affidavit of Leon Forniss) - Court Doc. No. 15-* at 2.  Correctional officials immediately "placed [Martin] in a single cell pending transfer to a safe institution where Inmate Martin

did not fear for his life.  Inmate Martin transferred from Staton Correctional Facility on April 27, 2007 to Kilby Correctional Facility...."  *Id*. at 2-3.

## IV.  DISCUSSION

Martin alleges the defendants acted with deliberate indifference to his safety due to their "failure to provide adequate security before and after verbal and physical assault by another inmate."  *Plaintiff's Complaint - Court Doc. No. 1* at 2.  Martin also appears to make the conclusory assertion that overcrowding in the prison system led to the actions about which he complains.  *Id*. at 5.

The defendants deny they acted with deliberate indifference to Martin's safety.  Specifically, the defendants maintain they undertook all necessary measures to ensure Martin remained safe from attack by other inmates.  The defendants further argue the record is devoid of evidence establishing Martin endured a substantial risk of serious harm.  Finally, the defendants assert there is no evidence before the court which demonstrates they were subjectively aware of any such risk.

### A.  Eleventh Amendment Immunity[2]

To the extent Martin sues the defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name,

---

[2]Eleventh Amendment immunity does not foreclose suits for equitable, i.e., injunctive and/or declaratory, relief; rather, if applicable, it forecloses suits for compensable damage awards.

10

... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B. Individual Capacity Claims - Failure to Protect

Martin maintains the defendants failed to protect him from the physical attacks by Hardy. Correctional officials may be held liable under the Constitution for acting with

"deliberate indifference" to an inmate's safety when the official knows that the inmate

faces "a substantial risk of serious harm" and with such knowledge disregards that risk by

failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828

(1994).   "It is not, however, every injury suffered by one inmate at the hands of another

that translates into a constitutional liability for prison officials responsible for the victim's

safety." *Id.* at 834.   A constitutional violation occurs only "when a substantial risk of

serious harm, of which the official is subjectively aware, exists and the official does not

'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970,

1982-83, 128 L.Ed.2d 811 (1994).   A plaintiff must also show that the constitutional

violation caused his injuries." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir.

2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to

establish an Eighth Amendment violation.  With respect to the requisite objective elements,

an inmate must first show "an objectively substantial risk of serious harm ... exist[ed].

Second, once it is established that the official is aware of this substantial risk, the official

must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-

1029.  As to the subjective elements, "the official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also

draw the inference....   The Eighth Amendment does not outlaw cruel and unusual

'conditions'; it outlaws cruel and unusual 'punishments.' ... ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***." *Farmer*, 511 U.S. at 837-838 (emphasis added). "Proof that the defendant should have perceived the risk, but did not, is insufficient." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting *Farmer*, 511 U.S. at 838) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must

13

be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted); *Rich v. Bruce*, 129 F.3d 336, 339-340 (4th Cir. 1997) (unless a prison official actually makes the inference that a substantial risk of serious harm exists, he does not act with deliberate indifference even though his actions violate prison regulations or can be described as stupid and lazy).  As the foregoing makes clear, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983...." *Brown*, 894 F.2d at 1537.  Thus, in order to survive summary judgment on his deliberate indifference claims, Martin is required to produce sufficient evidence demonstrating (1) an objectively substantial risk of serious harm; (2) subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries.  *Farmer*, 511 U.S. at 837-838; *Marsh*, 268 F.3d 1028-1029; *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

　　1.  **The February 2, 2007 Assault.**  Prior to the assault by Hardy and Simmons on February 2, 2007, the evidentiary materials establish no defendant had knowledge of any animosity held by other inmates towards Martin.  It is likewise undisputed that Martin made no mention to correctional officials that he had a problem with inmates Hardy and Simmons or feared attack by these inmates.  The record therefore contains no evidence that

the attack by Hardy and Simmons occurred due to deliberate indifference or reckless disregard by the defendants to Martin's safety.  Specifically, Martin presents no evidence of an objectively substantial risk of serious harm nor is there any evidence demonstrating subjective awareness of a substantial risk of such harm by the defendants, each of which is a required element of his Eighth Amendment claim.  "Plaintiff has failed to establish that the Defendant[s] had a subjective awareness of a substantial risk of serious physical [harm] to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim.  When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established...."  *Carter*, 352 F.3d at 1350 (footnote omitted).  Consequently, summary judgment is due to be granted in favor of defendants on this claim.

    **2.**  **The March 27, 2007 Incident.**  On February 2, 2007, after reprimand by defendant Copeland regarding the Hardy/Simmons assault, Martin entered a living agreement in which he acknowledged that his problem with Hardy and Simmons had "been worked out an[d] that [he, Hardy and Simmons] could live [together] without violence existing between us."  *Defendants' Exhibit 1-E - Court Doc. No. 15-6* at 2.  In light of Martin's acquiescence to the terms of the living agreement, all three inmates returned to general population.  Martin maintains he advised defendant Copeland six weeks prior to the March 27, 2007 incident that Hardy verbally threatened him.  Martin, however, did not seek protection from Hardy at the time he reported the alleged threat by undertaking

security measures available to him in the prison system, i.e., he did not name Hardy as an enemy, rescind the living agreement, request placement in protective custody or advise the officer he feared for his safety from Hardy. Copeland denies he had any reason to believe Hardy would again attack Martin and the remaining defendants assert they possessed no knowledge of any possible threat to Martin's safety.

Knowledge of a mere verbal threat several weeks prior to the March 27, 2007 altercation "does not provide a sufficient basis to make the inferential leap that a substantial risk of serious harm to Plaintiff existed [at the time of the second attack.]." *Carter*, 352 F.3d at 1350. The record before this court likewise does not demonstrate that upon hearing Martin's accusation of a threat defendant Copeland drew the inference that a substantial risk of serious harm existed. Under the circumstances of this case, "to find [Copeland] sufficiently culpable would unduly reduce awareness to a more objective standard, rather than the required subjective standard set by the Supreme Court." *Carter*, 352 F.3d at 1350. Additionally, Martin presents no evidence indicating that any defendant "had a subjective awareness of a substantial risk of serious physical threat to Plaintiff...." *Id*. Thus, Martin has not established a requisite element of his deliberation indifference claim" and, "[w]hen viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established...." *Id*. The defendants are therefore entitled to summary judgment on this claim.

16

**3.  Overcrowding.**  Martin alleges the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to ensure his physical safety in an environment of overcrowding which provided opportunities for other inmates to attack him.  The evidentiary materials before the court establish neither attack resulted from overcrowding as each attack was an isolated incident which occurred solely because Hardy believed Martin had made derogatory statements about him.

With respect to the objective element of Martin's Eighth Amendment claim, he must show that the conditions under which he was incarcerated presented "a substantial risk of serious harm" to him, *Farmer*, 511 U.S. at 834, to which the defendants responded in an objectively unreasonable manner. *Marsh*, 268 F.3d at 1028-1029.  In addressing whether a substantial risk of serious harm exists, "[t]his objective standard 'embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency ...,"' but must be balanced against competing penological goals." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (citations omitted).  Similarly, a court must remain mindful that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990).  While "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm[,] 'occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment....'" *Purcell*, 400 F.3d at 1320 (internal citation omitted) (granting summary judgment for sheriff and jail

17

administrator where plaintiff failed to present evidence that conditions at the jail rose to the level of a constitutional violation, despite the fact that inmates were allowed to keep money in their cells; inmates were allowed to play cards and gamble; the physical layout of the jail hindered guards from seeing into certain cells at night from the control tower; and there was a history of isolated, inmate-on-inmate fights).

Here, Martin presents no evidence that overcrowding actually posed an objectively substantial risk of serious harm to him. Moreover, the specious allegation made by Martin regarding overcrowding falls woefully short of establishing exposure to anything "even approaching 'the constant threat of violence.'" *Purcell*, 400 F.3d at 1321. Therefore, when viewing the evidence in a light most favorable to Martin, the court concludes that the conditions under which he was incarcerated failed to pose a substantial risk of serious harm so as to satisfy the objective element of his Eighth Amendment claim.

Martin likewise fails to advance sufficient proof that the defendants were subjectively, deliberately indifferent to any risk of serious harm. Martin has not shown the defendants were subjectively aware that a substantial risk of serious harm existed and, with such knowledge, "knowingly or recklessly" declined to take action to prevent the perceived harm. *LaMarca*, 995 F.2d at 1535; *Marsh*, 268 F.3d at 1028 (a constitutional violation occurs only when the prison official is subjectively aware of a substantial risk of serious harm and the official fails to respond to the risk in a reasonable manner). As discussed

above, Martin has failed to present any evidence that the conditions at Staton during the time of the challenged attacks actually posed a substantial risk of serious harm to him. Although it is undisputed that inmate assaults occur in the prison system, the record fails to show "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Farmer*, 511 U.S. at 842 (internal quotation marks omitted).  Even if the prison system was experiencing conditions of overcrowding and/or understaffing at the time of the assaults on Martin, such allegations are insufficient to establish that the defendants knew a substantial risk of serious harm existed and, with such knowledge, deliberately failed to prevent the harm.  The requisite element of subjective awareness on the part of the defendants is therefore absent in this case. *Carter*, 352 F.3d at 1350.

Finally, Martin fails to show that actions, orders, customs, policies or breaches of statutory duty by the defendants proximately caused the deprivation of his constitutional rights.  Martin has likewise presented no evidence, substantially probative or otherwise, that the assaults were the proximate result of a lack of security or overcrowded conditions. Thus, the court finds Martin's evidence likewise insufficient to satisfy the causation element of his Eighth Amendment claim.

While it is unfortunate that Martin suffered assaults at the hands of other inmates during his incarceration, the record is completely devoid of evidence that the assaults

19

occurred due to the deliberate indifference of the defendants.  Martin presents no evidence of an objectively substantial risk of serious harm nor is there any evidence demonstrating the defendants' subjective awareness of a substantial risk of harm, each of which is a required element of his Eighth Amendment claim.  Additionally, the evidence is insufficient to establish causation.  In light of the foregoing, the defendants are entitled to summary judgment on the claim arising from overcrowding in the prison system.  *Carter*, 352 F.3d at 1350.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before June 1, 2009, the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc*)*, adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 19th day of May, 2009.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE